UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY KEPLAR,

    Plaintiff,

v.                                                 Case No. 8:18-cv-1370-T-CPT

ANDREW M. SAUL,
Commissioner of
Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1969, completed the eleventh grade, and has past relevant work experience as a window repairer. (R. 44-45, 58-59). In December 2014, the Plaintiff applied for DIB, alleging disability as of June 15, 2012, due to diabetes

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit.

and high blood pressure. (R. 68). The Social Security Administration (SSA) denied his application both initially and on reconsideration. (R. 67-88).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on February 7, 2017. (R. 37-66). The Plaintiff was represented by counsel at that hearing and testified on his own behalf. (R. 39-58). A vocational expert (VE) also testified. (R. 58-64).

In a decision dated July 21, 2017, the ALJ found that the Plaintiff: (1) was insured for DIB through December 31, 2014, and had not engaged in substantial gainful activity from the time of his alleged onset date through his date last insured; (2) had the severe impairments of obesity, diabetes, sleep apnea, hypertension, and peripheral neuropathy; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform a limited range of light work through his date last insured; and (5) based in part on the VE's testimony, could not perform his past relevant work but was capable of performing jobs that existed in significant numbers in the national economy through that time period. (R. 7-23). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.*

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he cannot perform the work identified by the Commissioner. *Id*. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court accords deference to the Commissioner's factual findings, no such deference is given to [his] legal conclusions."

*Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

### III.

On appeal, the Plaintiff contends that the ALJ failed to properly: (1) assess the retrospective opinion of his treating physician, Dr. Brandi Johnson; (2) evaluate his subjective complaints; and (3) consider all of the relevant medical evidence. (Doc. 22 at 10-31). The Commissioner counters that the ALJ's treatment of the evidence was both appropriate and adequately supported by the record. *Id.* Upon thorough review of the record and the parties' submissions, the Court finds no basis for reversal or remand.

### A.
*Medical Opinions*

In evaluating an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).[4] "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his] impairment(s),

---

[4] Although this regulation was amended effective March 27, 2017, the new regulation only applies to applications filed on or after that date. 20 C.F.R. § 404.1520c. Because the Plaintiff's application was filed in December 2014, the older version of the regulation applies here.

and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)). If a doctor's statement rises to the level of a "medical opinion," an ALJ must "state with particularity" the weight given to that opinion and the reasons therefor. *Id.* at 1179. In rendering this determination, the ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. § 404.1527(c). While the ALJ is required to consider each of these factors, he need not explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford*, 363 F.3d at 1159 (citation omitted). Good cause exists where the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (citation omitted); *see also Crawford*, 363 F.3d at 1159. This Circuit has also held that a treating physician's opinion is not entitled to great weight "if evidence of the claimant's daily activities contradicts the opinion." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) (citing *Phillips*, 357 F.3d at 1241).

Here, the Plaintiff's treating physician, Dr. Johnson, provided care to the Plaintiff from March to June 2015 for burns on his right leg and foot that he claims stemmed from his diabetes and peripheral neuropathy. (Doc. 22 at 8-9). On May 13, 2017, Dr. Johnson performed a physical functional capacity assessment of the Plaintiff and provided a retrospective assessment of his restrictions dating back to November 1, 2014, roughly two months before his date last insured. (R. 33-36). In her assessment, Dr. Johnson opined that, after November 1, 2014, the Plaintiff suffered from a number of significant exertional limitations that confined him to less than sedentary work during the relevant time frame. (R. 16, 34).

In his decision, the ALJ afforded Dr. Johnson's opinion "little weight." As support for this assessment and as noted above, the ALJ found that the Plaintiff was less restricted than Dr. Johnson determined and that his claimed impairments were not disabling. *Id.* The ALJ also found that the Plaintiff's diabetes mellitus, one of his impairments, was under control. *Id.*

The Plaintiff now argues that the ALJ "erred by summarily dismissing Dr. Johnson's opinion" on the grounds that she did not begin treating the Plaintiff until after his date last insured. (Doc. 22 at 15). This contention rests upon a misapprehension of the ALJ's reasoning. A fair reading of the ALJ's decision shows that he did not discount Dr. Johnson's opinion due to the start date of her treating relationship with the Plaintiff. (R. 16). Rather, the ALJ noted the timeframe of that relationship as part of his finding that Dr. Johnson's opinion was inconsistent with the

7

treatment records prior to the Plaintiff's date last insured. *Id.*[5] This inconsistency—not the fact that Dr. Johnson did not treat the Plaintiff before his date last insured—led the ALJ to discount Dr. Johnson's opinions.

Contrary to the Plaintiff's suggestion, the ALJ's assessment of Dr. Johnson's opinion is supported by substantial evidence. In evaluating the consistency of Dr. Johnson's opinion with the record as a whole, the ALJ highlighted medical records of the Plaintiff's primary care treatment with Suncoast Community Health Centers (Suncoast) in November 2014, as well as records reflecting other medical treatment he received before his date last insured. *Id.* The November 2014 Suncoast treatment records revealed that the Plaintiff denied a host of symptoms, complained of only uncontrolled hypertension, and rated his pain at a zero out of ten. (R. 308-09). The nurse practitioner at Suncoast who examined the Plaintiff during that period observed him to be in no acute distress and found his diabetes to be under control. *Id*. In addition, a review of the Plaintiff's systems was deemed unremarkable, and the Plaintiff refused additional care from Suncoast for his hypertension at that time. *Id.*

The Plaintiff's earlier treatment records largely show more of the same. In June 2013, the Plaintiff was hospitalized after falling due to leg weakness and numbness. (R. 334-40). The Plaintiff, however, had not been taking medication or receiving any

---

[5] The ALJ stated in pertinent part: "The undersigned finds the limitations alleged by Dr. Johnson to be inconsistent with the treatment records dated prior to December 31, 2014, the date last insured . . . . Notably, medical records appear to indicate that Dr. Johnson did not even begin seeing the claimant until after he burned his foot in February 2015. Dr. Johnson's limitations appear to be more consistent with the claimant's possible functional abilities after this injury." *Id.*

treatment for his diabetes or hypertension at the time. *Id.* Indeed, the Plaintiff had not received any treatment for his diabetes since being diagnosed with the condition years earlier. (R. 338). Moreover, during his hospitalization, the Plaintiff's symptoms, which included leg weakness and numbness or tingling, "totally resolved," and he was discharged to his home with no need for physical or occupational therapy. (R. 334-40).

The next month, in July 2013, the Plaintiff established care with Suncoast, which noted that he had not seen a primary care provider since 2009 and characterized his diabetes as uncontrolled. (R. 325). However, throughout his treatment with Suncoast, which continued through December 2014, the Plaintiff made few complaints regarding his extremities, was observed to be in no acute distress, and was assessed with diabetes mellitus that had been brought under control.[6] *E.g.,* (R. 310, 312, 314-18, 320-23, 325). While he reported numbness and tingling in his legs in October 2014 (R. 332), the Plaintiff's December 2014 records reflect that he had no leg pain while performing routine activities, no rest pain, and no leg swelling (R. 399-400). His treatment provider recommended that he engage in regular exercise and gain good control over his diabetes. (R. 400).

In addition to supporting the ALJ's finding that Dr. Johnson's opinion was at odds with the Plaintiff's November 2014 medical records, the treatment records discussed above also bear out the ALJ's finding that the Plaintiff's diabetes mellitus

---

[6] The only outlier was in February 2014, when the Plaintiff tripped going up stairs and reported left knee pain. (R. 316).

was under control.⁷ (R. 16). As a result, the Court is satisfied that the ALJ in this case had good cause to discount Dr. Johnson's opinion as not supported by the relevant evidence.

The Plaintiff's effort to buttress Dr. Johnson's opinion by pointing to other evidence in the record does not alter this conclusion. The fact that other record evidence may cohere with Dr. Johnson's conclusions does not provide a basis to overturn the ALJ's decision to give her opinion little weight. It is, after all, not the function of the Court to re-weigh the evidence upon review. *Gray v. Comm'r of Soc. Sec.*, 2018 WL 3805866, at *4 (M.D. Fla. Aug. 18, 2018) ("[T]o the extent that Plaintiff points to other evidence which would undermine the ALJ's RFC determination, his contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] . . . even if the evidence preponderates against the decision.") (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Instead, the Court must analyze whether the ALJ relied on substantial evidence and applied the proper legal standards. *Id.* After conducting its review, the Court finds that the ALJ has done just that. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this

---

⁷ The Court also notes in this regard that, in January 2015, a medical facility where the Plaintiff had received care—Tampa Pulmonary Medicine, P.A.—assessed the Plaintiff's diabetes as "without mention of complication" and "not stated as uncontrolled." (R. 417-18).

[c]ourt must affirm, even if the proof preponderates against it.") (quoting *Philips*, 357 F.3d at 1240 n.8).

B.
*Subjective Complaints*

The Plaintiff's second contention, that the ALJ did not properly evaluate his subjective complaints, is likewise without merit. (Doc. 17 at 17-24). While the Plaintiff alleges that the ALJ committed various legal and factual errors in conducting this analysis, the thrust of his argument appears to be that the ALJ erred in discrediting the Plaintiff's subjective complaints because the Plaintiff was noncompliant with his treatment. *Id.* at 17-22.

As noted above, at step four of the sequential evaluation process, the ALJ must assess the claimant's RFC and his ability to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ must assess from all the relevant evidence of record what a claimant can do in a work setting notwithstanding any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.* at § 404.1545(a)(1). As a result, in rendering the RFC determination, the ALJ must consider any medical opinions of record, all of the claimant's medically determinable impairments (both severe and non-severe), the total limiting effects of each impairment, and the claimant's subjective symptoms. *Id.* at §§ 404.1520(e), 404.1545(a); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole" throughout the sequential evaluation process).

The evaluation of a claimant's subjective complaints is governed by the "pain standard." *Dyer*, 395 F.3d at 1210. Under this standard, the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Where a claimant satisfies this "pain standard," the Regulations dictate that the ALJ then assess the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (applicable as of Mar. 28, 2016). Considerations relevant to this evaluation include the objective medical evidence; evidence of factors that precipitate or aggravate the claimant's symptoms; medications and treatments available to alleviate those symptoms; the type, dosage, effectiveness, and side effects of such medications and treatments; how the symptoms affect the claimant's daily activities; and the claimant's past work history. *Id*. A "claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (citations omitted).

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734

F.2d 513. 517 (11th Cir. 1984)). If the ALJ elects not to credit the claimant's subjective complaints, he must articulate explicit and adequate reasons for doing so. *Dyer*, 395 F.3d at 1210 (quotation and citation omitted). An ALJ, however, "need not cite particular phrases or formulations" in this evaluation, so long as the reviewing court can be satisfied that he "considered the claimant's medical condition as a whole." *Id.* at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)) (internal quotation marks omitted). A reviewing court will not disturb a clearly articulated credibility finding[8] that is supported by substantial evidence in the record. *Foote*, 67 F.3d at 1562 (citation omitted).

Here, the ALJ gave "little probative weight" to the Plaintiff's subjective reports as to the severity of his impairments because the ALJ found the Plaintiff's complaints to be inconsistent with the relevant treatment records. (R. 16). In support of this finding, the ALJ cited the Plaintiff's ability to perform various activities of daily living, medical evidence demonstrating the Plaintiff's full strength and lack of focal neurological deficits, the Plaintiff's noncompliance with his treatment, and the presence of a significant gap in that treatment. *Id.*

The Plaintiff's challenges to the ALJ's evaluation of his subjective complaints do not survive scrutiny. Citing Social Security Ruling (SSR) 82-59[9] and cases such as

---

[8] The Court recognizes the SSA no longer uses the term "credibility" when evaluating whether a claimant's subjective complaints are consistent with and supported by the record. Because the parties employ this term in their memorandum, however, the Court utilizes it here for consistency and ease of reference.

[9] SSRs "are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775

13

*Mack v. Comm'r of Soc. Sec*, 420 F. App'x 881 (11th Cir. 2011), the Plaintiff argues initially that the ALJ was required to find that he was disabled and that compliance with his treatment would restore his ability to work. *Id.* at 21. This argument is misguided. In *Mack*, the Eleventh Circuit made explicit that SSR 82-59, which sets forth "the circumstances in which the Commissioner can deny benefits on the basis that the claimant has failed to follow prescribed treatment," applies "only to claimants who would otherwise be disabled within the meaning of the Act." 420 F. App'x at 882-83 (citations omitted); *see also Smith v. Berryhill*, 2019 WL 2755054, at *4 (M.D. Fla. July 2, 2019) (explaining that SSR 82-59 is "applied in situations in which a claimant would be found to be disabled but the claimant fails, without justifiable cause, to follow treatment prescribed by a treating source").

As *Mack* makes clear, SSR 82-59 has no application here. The ALJ did not deny the Plaintiff benefits because he failed to adhere to his prescribed treatment. Rather, the Plaintiff's failure to comply with his treatment was but one factor upon which the ALJ relied in discounting the Plaintiff's subjective reports regarding the severity of his symptoms. As such, the ALJ was under no obligation to follow SSR 82-59. *See Crane v. Comm'r of Soc. Sec.*, 2017 WL 541571, at *13 (M.D. Fla. Feb. 10, 2017) (distinguishing ALJ's use of noncompliance with prescribed treatment to assess

---

(11th Cir. 2010) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)). While they do not bind the courts, they are generally afforded deference. *Id.* (citation omitted). SSR 82-59, in particular, was rescinded and replaced effective October 29, 2018, but was in effect at the time of the ALJ's decision. SSR 18-3P, 2018 WL 4945641 (S.S.A. Oct. 2, 2018).

14

plaintiff's subjective complaints from ALJ's use of such noncompliance to deny plaintiff's claim for benefits).

The Court similarly discerns no error in the ALJ's decision to discount the Plaintiff's subjective complaints based, in part, upon his noncompliance with treatment and the significant gap that existed in that treatment. The Plaintiff's argument on this front is two-fold: (1) he did not fail to comply with prescribed treatment; and (2) even if he did, any such noncompliance resulted from his financial inability to do so. (Doc. 22 at 19-20). Neither contention has merit.

With respect to the former, there is adequate support for the ALJ's finding that the Plaintiff did not comply with his treatment. (R. 16). After the Plaintiff established a primary care relationship with Suncoast in July 2013, records from this provider evidence a break in his treatment from February to August 2014. Although the Plaintiff avers he had been taking medication during this time frame, his August 29, 2014, treatment records show that he canceled *all* of his appointments during that period and also failed to follow a diabetic diet. (R. 315).

As to the latter, the record does not buttress the Plaintiff's contention that this significant treatment gap stemmed from a lack of financial resources. The only evidence the Court has located regarding the Plaintiff's ability to obtain medical treatment concerns an earlier period, before he began his relationship with Suncoast in July 2013. (R. 40-41, 294, 325). Further, that evidence establishes only that the Plaintiff did not have insurance prior to that time. It does not specify that his lack of insurance resulted from a financial inability, as he now contends. (R. 294).

The Plaintiff's remaining objections to the ALJ's assessment of his subjective complaints are likewise unavailing. (Doc. 22 at 22-23). Notwithstanding the Plaintiff's assertion to the contrary, the ALJ did not unduly rely on the Plaintiff's ability to perform certain activities of daily living in finding that his subjective complaints lacked the requisite evidentiary support. (R. 16). Instead, the ALJ observed that the Plaintiff retained the ability to engage in a wide variety of daily activities, such as driving, walking for exercise, and participating in some household chores. *Id.* The ALJ then found that, in conjunction with certain medical evidence and the Plaintiff's noncompliance with medical treatment, his capacity for activities of daily living undermined his subjective reports. *Id.* This analysis comports with the pertinent regulations and case law. 20 C.F.R. § 416.929(c)(3)(i) (listing daily activities as a factor relevant to an evaluation of a claimant's symptoms); *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 871 (11th Cir. 2012) (citing 20 C.F.R. § 404.1529) (providing that ALJ may consider claimant's daily activities when determining whether his testimony regarding her symptoms finds adequate support in the record). The cases on which the Plaintiff relies, where ALJs have found a plaintiff's limited ability to engage in daily activities dispositive of his disability claim, are readily distinguishable and need not be addressed here. (Doc. 22 at 22-23).

Nor is the Court persuaded by the Plaintiff's reliance on the fact that his treatment providers diagnosed certain of his impairments as severe as support for his subjective reports. *Id.* It is well settled that a mere diagnosis of an impairment does not speak to the severity and limiting effects of the underlying condition. *McCruter v.*

*Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). As a result, this argument also fails.

## C.
### ALJ's Consideration of Relevant Evidence

The Plaintiff's final claim of error is also two-fold: (1) the ALJ failed to discuss two pieces of evidence supportive of his claim—namely, nerve conduction studies and a treatment provider's observation that the Plaintiff had severe peripheral neuropathy, both falling after his date last insured;[10] and (2) the ALJ failed to call a medical expert to testify as to the Plaintiff's disability onset date. (Doc. 22 at 26-29). Both of these contentions are without merit.

Contrary to the Plaintiff's assertion, an ALJ is not obligated to discuss each piece of evidence as long as the ALJ's decision demonstrates that he considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1211. By the Court's lights, the ALJ's decision shows that he considered the entire record in evaluating the Plaintiff's medical condition as a whole, including records regarding treatment he received after his date last insured.

The ALJ's alleged failure to enlist the services of a medical expert to determine the Plaintiff's disability onset date is also readily disposed of. The Plaintiff cites *McManus v. Barnhart*, 2004 WL 3316303 (M.D. Fla. Dec. 14, 2004), in support of this

---

[10] The Plaintiff concedes that the ALJ discussed these nerve conduction studies in his decision but complains that the ALJ did not discuss them in relation to his date last insured. *Id*.

argument. In *McManus*, the court grappled with the question of when an ALJ is required by SSR 83-20[11] to procure the advice of a medical expert regarding the disability onset date. The court concluded that an ALJ should do so where he "is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous." 2004 WL 3316303, at *6. *McManus*, however, has no application here.

The Eleventh Circuit has instructed, albeit in unpublished decisions, that SSR 83-20 applies "only after there has been a finding of disability and it is then necessary to determine when the disability began." *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014) (citation omitted); *see also Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) (concluding "that the ALJ did not contravene SSR 83-20 because the ALJ ultimately found that [plaintiff] was not disabled, and SSR 83-20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date after a finding of disability"). Thus, even if the Plaintiff succeeded in establishing that the relevant evidence was inadequate or ambiguous—a finding the Court does not make—his argument still fails because the ALJ did not find him disabled. In any event, the Court is satisfied that the record evidence prior to the Plaintiff's date last insured (much of which is discussed above)

---

[11] The purpose of SSR 83-20 is to "state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act . . . and implementing regulations." SSR 83-20, 1983 WL 31249, at *1.

provided the ALJ with a sufficient basis to render a decision on the Plaintiff's DIB claim, and the Plaintiff does not meaningfully argue otherwise.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

DONE and ORDERED in Tampa, Florida, this 30th day of September 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record